Wasserman v. Black 










[WITHDRAWN 9-20-95]





IN THE
TENTH COURT OF APPEALS
 

No. 10-95-208-CV

        WILLLIAM G. WASSERMAN,
                                                                                                        Relator
        v.

        HON. W.D. BLACK, JR., JUDGE, 77TH DISTRICT 
        COURT, LIMESTONE COUNTY, TEXAS,
                                                                                                        Respondent
 

 Original Proceeding
                                                                                                    

O P I N I O N
                                                                                                    

          Relator William G. Wasserman seeks a writ of mandamus from this court directing the
Honorable H.D. Black, Jr., to vacate his order of May 5, 1995, that denied his motion to
disqualify J. Val Fulcher from representing any of the parties to the cause of action docketed under
94-257-A in the 77th District Court of Limestone County, and directing Judge Black to grant said
motion. We conclude that Wasserman is entitled to the relief sought and conditionally grant the
writ.
Procedural and Factual Background
          The City of Teague is a Class A municipality under the Texas Local Government Code. 
See Tex. Loc. Gov't Code Ann. § 5.001 (Vernon 1988). It operates with an elected mayor and
city council, and a city secretary appointed by the council. Teague also has one municipal judge
position. Real Parties in Interest Stanley Smith, Fred McKinley, and William Brooke at one time
occupied positions of employment with the City of Teague. Smith served in the City Secretary
position until he was terminated by the council on or about October 8, 1993. Until recently,
McKinley served as the city's Director of Public Works until he was discharged by the council on
December 17, 1993. Brooke served as Teague's municipal judge until February 14, 1994, when
he was removed as the result of a "no confidence" vote from the council.
          Upon considering the circumstances of their dismissals, Smith, McKinley, and Brooke
(hereafter plaintiffs) concluded that the members of the council and Wasserman had conducted a
"smear campaign" against them and had violated certain provisions of the Texas Open Meetings
Act to foment their discharge.


 See Tex. Gov't Code Ann. §§ 551.001-.146 (Vernon 1994). 
Accordingly, on August 12, 1994, plaintiffs filed suit against the City of Teague, Wasserman, and
councilmen Wayne Shinn, Jerrell Sartor, James Herrington, and Melvin Wylie, alleging violations
of the Texas Open Meetings Act and conspiracy to libel and slander (hereafter the principal suit).
          When it received notice of the principal suit, the council decided to hire attorney J. Val
Fulcher to represent each of the defendants named in the suit. Furthermore, the council agreed
to indemnify Wasserman and any of the individual councilmen should they incur any personal
financial liability from the lawsuit. Fulcher, agreeing to represent the parties but apparently aware
that his representation of multiple parties might result in a conflict of interest, on August 24 sent
a letter to the council and to Wasserman warning them of this possibility. He advised each of
them that they might want to retain their own independent counsel and that, should they choose
to proceed with him as their attorney, they should inform him immediately when and if a conflict
of interest should arise. Notwithstanding the warning, each of the defendants permitted Fulcher
to represent him in the principal suit.
          Fulcher wasted no time in actively representing his clients. On October 25 he filed on the
behalf of the defendants an answer to the plaintiffs' petition and two counterclaims. In the same
pleading, Fulcher also filed a third counterclaim solely on the behalf of Shinn, alleging $50,000
in actual damages and requesting $50,000 in punitive damages for the unlawful interference with
his other employment at the United State Postal Service.
          On November 15 an employee of the city not a party to this lawsuit gave a sworn statement
to Police Chief Roger Brooke that on the previous day Wasserman asked him to notarize a
document containing accusations of illegal activity against Mayor (formerly Councilman) Sartor
and deliver the document to a councilman also not a party to this lawsuit. The employee
performed his duties as instructed by Wasserman.
          On November 16 Wasserman's deposition was taken by the plaintiffs' attorney with
Fulcher present. The deposition apparently proceeded without incident until, in response to a
question from the plaintiffs' attorney, Wasserman testified that he, as a professional auditor, did
not believe the City of Teague should pay for Fulcher to represent Shinn in his counterclaim
against the plaintiffs. The next day Fulcher sent a letter to the council, Mayor Sartor, and
Wasserman, informing them of a possible conflict of interest between Wasserman and some or all
of the remaining defendants. He asked the council to discuss the issue at its next meeting and
asked Wasserman to respond in writing to his concerns.
           In a letter dated December 2, 1994, Wasserman wrote to Fulcher explaining that, at the
deposition, he was merely offering his opinion as an auditor that he did not believe the city should
fund Shinn's counterclaim against the plaintiffs. Wasserman also indicated in the letter, however,
that he understood the city had the authority to pay the attorney's fees for each of the defendants
involved in the case and that, as a result, he was not opposed to the city's decision to pay the
attorney's fees related to Shinn's counterclaim.
          On December 5 the council voted to discharge Wasserman as City Secretary effective
immediately; the council also decided to no longer provide Wasserman with legal representation
in the principal suit.



          On December 16 Fulcher filed answers to interrogatories and responses to requests for
admissions on the behalf of Wasserman in the principal suit. Also on December 16, Fulcher filed
his motion to withdraw as counsel for Wasserman in the principal suit. Wasserman, who had
since retained W.R. Malone as his own independent counsel, did not oppose the motion, and it
was granted on January 23, 1995.
          Also on January 23, Malone, alleging that the council had rescinded its agreement to
indemnify Wasserman for any financial liability he might incur in the principal suit, filed a cross-claim in the principal suit against the City of Teague and Sartor (hereafter cross-defendants) for
a declaration of his rights to indemnification (hereafter Wasserman's cross-claim). In addition,
Malone filed a second cross-claim against Sartor and the city of Teague alleging, among other
things, wrongful discharge, intentional infliction of emotional distress, and defamation (hereafter
the second suit).



          On February 2 Fulcher filed a general denial on the behalf of the cross-defendants to both
Wasserman's cross-claim and the second suit. At about this time, Fulcher, the council, and Sartor
decided that too many potential conflicts of interest would exist if Fulcher attempted to represent
Sartor and the city in either the second suit or Wasserman's cross-claim, so the determination was
made to retain Kenneth R. Stein, alone, to defend these claims. Nevertheless, Fulcher remained
the attorney for the defendants other than Wasserman in the principal suit.
          On February 13 Stein filed a general denial on the behalf of cross-defendants to both
Wasserman's cross-claim and the second suit.
          On February 7 Malone filed Wasserman's motion to disqualify Fulcher from representing
any of the litigants in any of the proceedings, and when it was denied he brought this mandamus
petition.
Disqualification
          Rule 1.09(a) of the Texas Disciplinary Rules of Professional Conduct provides:
 
Without prior consent, a lawyer who personally has formerly represented a client
in a matter shall not thereafter represent another person in a matter adverse to the
former client:
(1) in which such other person questions the validity of the lawyer's
services or work product for the former client;
(2) if the representation in reasonable probability will involve a violation of
Rule 1.05;


 or
(3) if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof. Conduct 1.09(a) (1991), reprinted in Tex. Gov't Code Ann. tit.
2, subtit. G app. (Vernon Supp. 1995) (State Bar Rules art. X, Sec. 9).
          Although the wording of Rule 1.09(a)(2) indicates that it was designed primarily to address
situations where an attorney seeks to represent a wholly new client in litigation against a former
client, we believe the rule also applies under these facts where an attorney represents multiple
parties and a conflict arises among them. The concern addressed by Rule 1.09(a)(2) under the
former situation is also present in the latter: an attorney, who having represented a client, might
use confidential information gained during that representation to the former client's detriment. 
See Tex. Comm. on Professional Ethics, Op. 482, 57 Tex. B.J. 200 (1994). Rule 1.09(a)(2)
applies here.
          Prior to Fulcher's withdrawal from his representation of Wasserman, he was actively
engaged in the representation of Wasserman and his interests. Not only did he file an answer and
two counterclaims on the behalf of Wasserman and the other defendants named in the plaintiffs'
petition in the principal suit, but he also assisted Wasserman in answering his discovery and
appeared as his legal representative when his deposition was taken on November 16, 1994. Such
representation of a client necessarily involves the discussion of many factual details pertinent to
the case, and Wasserman, in a sworn affidavit, asserted that many of these details were related to
Fulcher in confidence.
          Fulcher's possession of this confidential information puts him in a position adverse to
Wasserman. It takes little creativity to imagine a scenario where the defendants in the principal
suit, in facing the prospect of incurring individual liability under the plaintiffs' causes of action,
attempt to shift responsibility to one or more of their codefendants. Moreover, with the city's
picking up the tab for all of the defendants except Wasserman, any reasonable attorney
representing these multiple defendants would attempt to demonstrate, if the evidence would allow
it, that any blame properly rests on Wasserman's shoulders.


 While we do not suggest or presume
Fulcher would misuse any confidential information, were he to continue to represent the cross-defendants in Wasserman's cross-claim or the second suit, he could be forced to choose between
thoroughly representing his remaining clients and maintaining the confidentiality of the
information obtained from Wasserman. See id.; see also NCNB Texas Nat'l Bank v. Coker, 765
S.W.2d 398, 400 (Tex. 1989) (orig. proceeding). Clients should not be put in a position where
they must fret over whether the confidential information they disclosed to their previous attorney
will later be used against them. See Coker, 765 S.W.2d at 400 (once the requirements of Rule
1.09(a)(3) are established, the court will disqualify the attorney notwithstanding any lack of
suspicion that he will divulge confidential information); Contico Int'l, Inc. v. Alvarez, No. 8-95-60-CV, slip op. at 10 (Tex. App.—El Paso, July 13, 1995, n.w.h.) (orig. proceeding) ("In the area
of use of an opposing party's confidences ... there is no need to show actual wrongdoing, or even
actual use of the confidential information, in order to disqualify counsel from the
representation."). Rule 1.09(a)(2) assures clients, even those clients whose attorney is involved
in the multiple representation of parties, that they may freely and openly discuss all the facts of
their case with their attorney and without concern that the information discussed will later be
disclosed to a potential adversary. See Coker, 765 S.W.2d at 400. To hold otherwise would
threaten the confidential nature of the attorney-client relationship. We conclude that Rule
1.09(a)(2) prevents Fulcher's continued representation of the defendants in the principal suit and,
therefore, he should be disqualified.
Waiver
          A party who fails to seek disqualification timely waives the complaint. Grant v. Thirteenth
Court of Appeals, 888 S.W.2d 466, 468 (Tex. 1994) (orig. proceeding) (per curiam) (on
rehearing). The court will consider the length of time between the moment the conflict became
apparent to the aggrieved party to the time the motion for disqualification is filed in determining
whether the complaint was waived. See Vaughan v. Walther, 875 S.W.2d 690, 690-91 (Tex.
1994) (orig. proceeding) (per curiam). The court should also consider any other evidence which
indicates the motion is being filed not due to a concern that confidences related in an attorney-client relationship may be divulged but as a dilatory trial tactic. See Spears v. Fourth Court of
Appeals, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding).
          Here, there is evidence that at least as early as November 15, 1994, Wasserman suspected
Sartor had committed illegal acts. Whether the alleged acts were performed in his position as a
city official is not indicated in the record. Also not indicated in the record is whether these alleged
acts were somehow related to the plaintiffs' complaints in the principal suit. Without any evidence
to link these allegations to the plaintiffs' complaint in the principal suit, we cannot consider
Wasserman's actions to have provided him with the basis of knowledge for concluding that he
might have a conflict of interest with Sartor in the case.
          What is clear from the record is that on November 16, 1994, Wasserman made a statement
during his deposition that he did not believe the city should pay for the attorney's fees in Shinn's
counterclaim against the plaintiffs in the principal suit. On November 17 Fulcher sent Wasserman
a letter informing him that this deposition testimony revealed a possible conflict of interest and
asking him to explain his testimony. On December 2 Wasserman responded to Fulcher, stating,
in essence, that he did not believe a conflict existed and that he was content to have Fulcher
continue to represent all the named defendants in the principal suit. Wasserman was then fired
on December 5. On December 16 Fulcher filed his motion to withdraw as Wasserman's counsel
in the principal suit. By January 23, 1995, the date upon which Fulcher's motion to withdraw was
granted, Wasserman had retained his own counsel and filed his cross-claims. His motion to
disqualify Fulcher was filed on February 7.
          Considering that Wasserman's complaints in the second suit and his cross-claim in the
principal suit appear to be derived from the termination of his employment and the city's decision
to no longer provide him indemnity in the principal suit, the date upon which Wasserman first
became aware of the conflict was December 5, the day he was fired. Certainly as early as
November 16, the day of his deposition, Wasserman possessed information that a real conflict may
have been arising between him and the city; nevertheless, his letter to Fulcher dated December 2
indicates that he did not believe there was any true conflict. A reasonable person under these facts
would not have concluded at that time that such a conflict had arisen between Wasserman and his
codefendants to such a point that he needed to seek the disqualification of Fulcher from
representing the codefendants in the litigation before the trial court. Having identified December
5 as the date the conflict became apparent to Wasserman, we note that approximately two months
passed from this date until the date he filed his motion to disqualify.
           With regard to any other evidence of a possible improper use of the motion to disqualify,
nothing in the record indicates that it was filed on the eve of any final hearing or trial date. See
Vaughan, 875 S.W.2d at 691. The facts fail to indicate either the use of his motion to disqualify
as a dilatory tactic by Wasserman or any negligence by him in bringing the motion promptly. See
Spears, 797 S.W.2d at 656. Therefore, we conclude that Wasserman's complaint against
Fulcher's representation of the defendants in the principal suit was not waived. See Syntek
Finance Corp. v. Metropolitan Life Ins. Co., 880 S.W.2d 26, 34 (Tex. App—Dallas), rev'd on
other grounds, 881 S.W.2d 319 (Tex. 1994) (six weeks between time conflict became apparent
and time motion to disqualify was filed did not waive complaint).
Whether Mandamus Will Lie
          A writ of mandamus may be issued to correct a "clear abuse of discretion." Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). Issuance of a writ of mandamus
is limited to those instances in which no adequate remedy by appeal exists. Id. at 840; Jampole
v. Touchy, 673 S.W.2d 569, 572-73 (Tex. 1984) (orig. proceeding). Disqualification of counsel
is a proper subject of a mandamus proceeding. Coker, 765 S.W.2d at 400; Centerline Indus. Inc.
v. Knize, 894 S.W.2d 874, 875 (Tex. App.—Waco 1995, n.w.h.). We conclude the trial court's
failure to grant Wasserman's motion to disqualify was a clear abuse of discretion for which he was
left with no adequate remedy by appeal.


 We 

will conditionally grant the requested writ of mandamus; it will issue only upon the trial court's
failure to comply with this opinion and order.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Writ of mandamus conditionally granted
Opinion delivered and filed August 23, 1995
Publish
[WITHDRAWN BY ORDER 9-20-95]